**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>    Defendant. | C.A. No.14-cv-1254-GMS |
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>SHAPERS UNLIMITED, INC. d/b/a CLASSIC SHAPEWEAR,<br><br>    Defendant. | C.A. No. 14-cv-1255-GMS |
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>MODA LATINA, LLC d/b/a LEONISA,,<br><br>    Defendant. | C.A. No. 14-CV-1258 GMS |

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, | |
| Plaintiff, | C.A. No. 14-1259-GMS |
| v. | |
| BLOOMINGDALE'S BY MAIL, LTD., BLOOMINGDALE'S, INC., | |
| Defendant. | |
| BLACKBIRD TECH LLC d/b/a BLACKBIRD TECHNOLOGIES, | |
| Plaintiff, | C.A. No. 14-cv-1261-GMS |
| v. | |
| SPANX, INC., | |
| Defendant. | |

## **DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I.     INTRODUCTION AND BACKGROUND ....................................................... 1

II.    APPLICABLE LAW REGARDING CLAIM CONSTRUCTION ................................... 3

III.   DISPUTED CLAIM TERMS .................................................................... 3

    A.    "A Pair of Thigh Encircling Elastic Bands" (Claims 1, 5) ..................... 4

    B.    "Lift Band(s)" (Claims 1, 2, 3, 4) .......................................... 6

    C.    "Attached" (Claim 1) ....................................................... 8

    D.    "Spiral Up and Out" (Claim 1) .............................................. 11

    E.    "Crotch Strap Extending from the Front of Said Waistband to the Rear of Said Waistband" (Claim 1) ................................................... 12

    F.    Terms of Degree and Aesthetics ............................................. 13

IV.   CONCLUSION ................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bayer Intellectual Property GmbH, et al. v. Warner Chilcott Co., et al.*,
No. 12-1032-GMS, 2015 WL 1849015 (D. Del. Apr. 21, 2015) ...........................................15

*Bayer Intellectual Property GmbH, et al. v. Warner Chilcott Co., et al.*,
No. 12-1032-GMS, D.I. 120 (D. Del. Oct. 9, 2014) ..............................................................14

*Crane Co. v. Sandenvendo Am., Inc.*,
Case No. 2:07-CV-042, 2009 WL 1586704 (E.D. Tex., June 5, 2009)..................................16

*Datamize LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)..............................................................................................16

*Gillette Co. v. Energizer Holdings, Inc.*,
405 F.3d 1367 (Fed. Cir. 2005)..............................................................................................10

*Hologic, Inc. v. SenoRx, Inc.*,
639 F.3d 1329 (Fed. Cir. 2011).............................................................................................6, 8

*Innova/Pure Water, Inc., v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004)..............................................................................................15

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014)...........................................................................................6, 15

*Markem-Imaje Corp. v. Zipher Ltd.*,
657 F.3d 1293 (Fed. Cir. 2011)..............................................................................................13

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
357 F.3d 1340 (Fed. Cir. 2004)..............................................................................................10

*NCR Corp. v. Palm, Inc.*,
217 F. Supp. 2d 491 (D. Del. 2002)..........................................................................................6

*Romala Stone, Inc. v. Home Depot U.S.A., Inc.*,
Case No. 1:04-CV-2307, 2007 WL 2904110 (N.D. Ga. Oct. 1, 2007) ..................................16

## STATUTES

35 U.S.C. § 112..........................................................................................................................3

## OTHER AUTHORITIES

U.S. Patent No. 7,081,036................................................................................................ passim

Webster's Third New International Dictionary of the English Language (2002) .........................10

Defendants Amazon.com, Inc., Shapers Unlimited, Inc., Moda Latina, LLC d/b/a Leonisa, Bloomingdale's by Mail, Ltd., Bloomingdale's, Inc., and Spanx, Inc. (collectively, "Defendants") hereby submit their Opening Claim Construction Brief with regard to U.S. Patent No. 7,081,036.

## I.    INTRODUCTION AND BACKGROUND

In this lawsuit, Plaintiff Blackbird Technologies ("Plaintiff" or "Blackbird") asserts that products sold or manufactured by Defendants infringe various claims of U.S. Patent No. 7,081,036 ("the '036 Patent"), entitled "Buttock Lift Support" (*see, e.g.*, Case No. 1:14-cv-1254, D.I. 1).   The '036 Patent provides two forms of the disclosed buttock lift support, which are depicted in Figures 1A and 1B:

**Figure 1A:**

**Figure 1B:**



('036 Patent (attached as Ex. A) at Figs. 1A-1B; 1:58-63).   These forms of the buttock lift support are incorporated into three embodiments of a panty garment, which are illustrated in Figures 2-6 (*id.* at Figs. 2-6; 1:64-2:13).

The '036 Patent contains six claims, one of which is independent (claim 1) and five of which are dependent (claims 2-5).   Claims 1 and 4 contain the disputed claim terms and are reproduced below with emphasis added to the disputed terms:

1.  A buttocks lift support comprising:

> **a pair of thigh encircling elastic bands** adapted to **tightly fit** the upper thighs of a wearer;

> an elastic waistband adapted to be tightly fit to the waist of a wearer;

> a pair of **lift bands**, each lift band **attached** at a lower end to a respective thigh encircling band at an inner thigh region and at an upper end to a respective side of said waistband at a hip location thereon, so that said lift bands wrap around beneath the buttocks of the wearer and **spiral up and out** to said waistband, said lift bands being **tightly engaged** with a wearer's buttocks when said lift support is worn to exert a **significant lifting force** thereon and also on the thigh encircling elastic bands;

> a side panel sewn to an outer side of each of said thigh encircling elastic bands and extending up and over a wearer's hips to a respective side of said waistband to thereby cover the wearer's hips; and

> a **crotch strap extending from the front of said waistband to the rear of said waistband** to pass over the crotch area of the wearer, which together with said side panels form a panty garment.

4.  A buttocks lift support according to claim 3 wherein said lift bands are elastic, but **still stiff enough** to exert a **substantial lift**.

(*Id.* at 3:15-4:8; 4:16-18) (emphasis added).

As detailed in the specification, the buttock lift support disclosed in the '036 Patent contains a number of distinct components, each of which serve a particular function. Specifically, the claimed buttock lift support contains "a pair of thigh encircling bands adapted to tightly fit the upper thighs of a wearer" and "an elastic waistband adapted to be tightly fit to the waist of a wearer" (*id.* at 3:16-19). "[A] pair of lift bands" are "attached at a lower end to a respective thigh encircling band at an inner thigh region and at an upper end to a respective side of said waistband at a hip location thereon" (*id.* at 3:20-23). The lift bands are "tightly engaged

with a wearer's buttocks" so as to "exert a significant lifting force thereon" (*id.* at 3:25-28).

Additionally, "a side panel" is "sewn to an outer side of each of said thigh encircling bands" and

extends up to cover a wearer's hips (*id.* at 4:1-4).  Finally, "a crotch strap extend[s] from the

front of said waistband to the rear of said waistband to pass over the crotch area of the wearer"

(*id.* at 4:5-7).  The side panel and crotch strap together "form a panty garment" (*id.* at 4:7-8).

## II.    APPLICABLE LAW REGARDING CLAIM CONSTRUCTION

Because this Court is well-versed in claim construction law, Defendants will not burden

the Court with a statement of the applicable law.  Case law is only cited to the extent applicable

to the construction of each claim term discussed below.

## III.   DISPUTED CLAIM TERMS

Most of the claim terms of the '036 Patent are readily understandable and do not require

construction.  However, the parties dispute the proper construction of ten claim terms.  For five

of these terms, Defendants propose constructions that comport with the claim language and

teachings of the specification.  Plaintiff, on the other hand, proposes constructions for these

terms that are either unsupported by or inconsistent with the specification, in an effort to

encompass all of the accused products into its infringement read.  The other five terms that the

parties dispute are terms of degree or aesthetics, for which the specification provides no

objective boundaries.  Defendants believe that these terms are not amenable to construction, and

thus are indefinite under 35 U.S.C. § 112.[1]  Plaintiff's proposed constructions for these terms

themselves are replete with subjective language, thus further highlighting why these terms are

---

[1] Defendants appreciate that the Court often defers indefiniteness disputes until summary judgment.  Defendants raise these issues here to demonstrate that Plaintiff's proposed constructions are improper and because they believe that these disputes are ripe and case dispositive.  To the extent the Court wishes to defer issues of indefiniteness, however, Defendants will seek leave to file a motion for summary judgment of indefiniteness at an appropriate time.

not amenable to construction.  Thus, for the reasons discussed below, Defendants respectfully request that their proposed constructions be adopted.

### A.    "A Pair of Thigh Encircling Elastic Bands" (Claims 1, 5)

| Blackbird's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is necessary; if the term needs to be construed, it should be given its plain and ordinary meaning, which is: "elastic (stretchy) constricting portion that forms a circle around the thigh of the wearer" | "strips of elastic below the side panels which encircle the upper thighs" |

Claim 1 of the '036 Patent discloses "a pair of thigh encircling elastic bands" that are "adapted to tightly fit the upper thighs of a wearer" (Ex. A at 3:16-17).  The parties' proposed constructions of "a pair of thigh encircling elastic bands" differ in two primary respects.  First, Defendants contend that the claimed bands are distinct strips of material, whereas Plaintiff's construction broadly allows the "thigh encircling elastic bands" to be simply a "portion" of a garment, which could be construed to encompass, among other things, a part of another component or the edge or hem of a garment.  Second, Defendants contend that the "thigh encircling elastic bands" are strips of elastic (*i.e.*, the material elastic), while Plaintiff contends that the bands can be any "stretchy" material.  Defendants are correct in both regards, and their construction should be adopted.

First, the claims, the specification, and the figures all make clear that the thigh encircling elastic bands are distinct components of the disclosed buttock lift support.  Claim 1 recites that the "thigh encircling elastic bands" are "attached" to the disclosed "lift bands . . . at the inner thigh region of the wearer," thus indicating that a "thigh encircling elastic band" is a separate component to which the lift bands are attached (*id.* at 3:20-22).  It thus follows logically that the "thigh encircling elastic bands" are separate from the "side fabric panels," not merely a continuation of them, as Blackbird's construction would allow.

The specification and figures confirm this teaching.  The specification states that the "thigh encircling elastic bands 28A, 28B" are "connected to a waist band 30 by side fabric panels 32A, 32B" (*id.* at 2:52-54; *see also* 2:17-20 (describing thigh encircling elastic bands 12A, 12B); Figs. 1A-1B).  The "thigh encircling elastic bands," referred to by reference numbers 12A, 12B and 28A, 28B in the various disclosed forms and embodiments, are depicted below:



**Figure 1A (annotated):**  **Figure 5 (annotated):**

(*id.* at Figs. 1A, 5) (annotations added).  The specification and figures thus make clear that the "thigh encircling elastic bands" are distinct strips that are connected to the "side fabric panel" (*see id.* at Fig. 5).

Second, with regard to the nature of the material, the claim language itself describes that the thigh encircling bands are "elastic" (*id.* at 3:16; 3:28-29; 4:1-2; 4:21-22).  The specification confirms that the thigh encircling bands are comprised of the material elastic, as it invariably describes the thigh encircling bands only as "elastic," not "stretchy," as Blackbird proposes (*id.* at 2:17-19 ("[A] first embodiment of a buttock lift support 10 is shown; which includes a pair of

thigh encircling *elastic* bands…."); 2:52-53 ("A pair of thigh encircling *elastic* bands 28A, 28B are provided….")).[2]

Thus, the Court should adopt Defendants' proposed construction – "strips of elastic below the side panels which encircle the upper thighs" – and reject Blackbird's impermissibly broad construction. *Hologic, Inc. v. SenoRx, Inc.*, 639 F.3d 1329, 1338 (Fed. Cir. 2011) (holding that where "the specification, including the figures, consistently and exclusively" describe or illustrate a claim term in a certain manner, the claim term must be so construed); *NCR Corp. v. Palm, Inc.*, 217 F. Supp. 2d 491, 508 (D. Del. 2002) ("A construction that construes the invention as broader than what was disclosed and claimed is not supportable.").

**B.      "Lift Band(s)" (Claims 1, 2, 3, 4)**

| Blackbird's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is needed; if the term needs to be construed, it should be construed as: "constricting portions for exerting upward force" | "bands of elastic fabric" |

The buttocks lift support disclosed in claim 1 includes "a pair of lift bands" that are attached to the "thigh encircling elastic bands" and an "elastic waistband" (Ex. A at 3:20-23). Here again, Defendants' proposed construction – "bands of elastic fabric" – is consistent with the claims, the specification, and the figures, whereas Blackbird's proposed construction – "constricting portions for exerting upward force" – is impermissibly broad and is not supported by the specification.

---

[2]   Including the word "stretchy" in the construction of this term could lead to indefiniteness issues, as the patent provides no objective basis by which a third party could determine what constitutes a "stretchy" thigh encircling elastic band.  *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (holding that a claim term is indefinite where it is "highly subjective and, on its face, provides little guidance to one of skill in the art" in the specification).

First, the claims, specification, and figures make clear that the "lift bands" are separate components of the claimed buttock lift support rather than simply a "portion" of the support, as Blackbird contends. Claim 1 states that each "lift band [is] **attached** at a lower end to a respective thigh encircling band . . . and at an upper end to a respective side of said waistband," thus indicating that the "lift bands" are separate components which must be attached to other components in the claimed buttock lift support (*id.* at 3:20-23) (emphasis added). The specification confirms that the lift bands are separate components, noting that "elastic lift bands" are "sewn or otherwise attached" to both the thigh encircling bands and the waist band (*id.* at 2:25-30). Finally, the figures illustrate the "lift bands" as separate components of the disclosed support (*id.* at Figs. 1A-2, 5).

The specification also confirms that the claimed "lift bands" are "elastic," as Defendants propose. The specification invariably describes the lift bands as "elastic" (*id.* at 2:25) ("A pair of elastic lift bands 14A, 14B are also provided . . . ."); (*id.* at 1:41-45) ("The lift bands . . . while elastic are sufficiently stiff . . . ."). The specification and claims further state that the "lift bands" can be of variable widths and levels of stiffness (*id.* at 2:33-35 ("The length and stiffness of the lift bands is selected so as to cause the buttocks to be lifted when the support is worn."); 2:44-45 ("The lift bands are sufficiently wide, on the order of three inches. . . ."); *see also* Claim 4 ("A buttocks lift support according to claim 3 wherein said lift bands are elastic, but still stiff enough to exert a substantial lift.")).

In contrast, Plaintiff's proposed construction is overly broad and not supported by the specification. Specifically, Plaintiff proposes construing the "lift bands" as "constricting portions for exerting upward force." The word "constricting" appears nowhere in the '036 Patent, and is, in fact, contrary to the purpose of the lift bands, which is to lift and separate a

wearer's buttocks, not to constrict the buttocks (*see id.* at 2:33-42; 2:44-47; 2:66-3:2).  Similarly, there is no support in the specification for construing the "lift bands" as "portions" of material – a vague term that could be read on other components of the disclosed garment, such as the side panels.  Finally, there is no need to include "exerting upward force" in the construction of "lift bands," as independent claim 1 already discloses the function of the claimed lift bands (*id.* at 3:25-29) ("said lift bands being tightly engaged with a wearer's buttocks when said lift support is worn to exert a significant lifting force thereon and also on the thigh encircling elastic bands").  Because the claims, specification, and figures consistently describe and depict the "lift bands" as "bands of elastic fabric," Defendants' proposed construction should be adopted.  *Hologic, Inc.*, 639 F.3d at 1338.

### C.       "Attached" (Claim 1)

| Blackbird's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "connected directly or indirectly" | "sewn or otherwise directly connected" |

Claim 1 of the '036 Patent recites a "pair of lift bands, each lift band **attached** at a lower end to a respective thigh encircling band at an inner thigh region and at an upper end to a respective side of said waistband at a hip location thereon, so that said lift bands wrap around beneath the buttocks of the wearer and spiral up and out to said waistband . . . ." (Ex. A at 3:20-25) (emphasis added).  The parties' dispute regarding this term centers on whether the claimed attachment can be "indirect," as proposed by Blackbird (*i.e.*, the lift bands are "attached" to the thigh encircling band and waistband even if only connected to intermediate pieces of fabric which, in turn, are directly connected to the thigh encircling band and waistband), or whether the connection must be "direct," as proposed by Defendants.  As discussed below, Defendants' construction of "attached" – "sewn or otherwise directly connected" – is mandated by the

specification, and Blackbird's attempt to include indirect attachment in the construction of this term should be rejected.

Although the specification is sparse, it is nevertheless instructive with regard to the meaning of "attached."  The "Summary of the Invention" states that "[e]ach thigh encircling elastic band has the bottom of a wide elastic lift band attached to the inside facing areas of the respective encircling elastic bands" (*i.e.*, at the bottom of the buttock lift support) and that "[t]he upper ends of the lift bands are attached to the waist band at a point above and forward of the wearer's hip" (*i.e.*, at the top of the buttock lift support) (*id.* at 1:28-30; 1:34-36).  Further, in discussing the claimed attachment, the specification references two figures, FIGS. 1A and 2, both of which show the claimed lift bands directly attached to the thigh encircling bands at one end, and directly attached to the waistband at the other end (*see id.* at Figs. 1A, 2).  FIGS. 1A and 2 are reproduced below:



**Figure 1A (annotated):**

**Figure 2 (annotated):**

(*id.* at Figs. 1A, 2) (annotations added).  Describing FIG. 1A, the specification confirms what the figure depicts, namely that "[a] pair of lift bands are also provided, the lower end of each lift band 14A, 14B **sewn or otherwise attached** to a respective thigh encircling elastic bands 12A,

12B at the inner thigh region 18 thereof" (*id.* at 2:25-28) (emphasis added).  Similarly, FIG. 2 shows a direct connection between the lift bands (36A and 36B), thigh encircling bands (28A and 28B), and waistband (30) (*see id.* at Fig. 2).  As explained in the specification, "[a] **pair of lift bands** 36A, 36B **have their bottom ends sewn** to a respective one of the thigh encircling elastic bands 28A, 28B at the inner thigh region 40, **and at their top to the waistband** 30 at the hip region 42, **which may be sewn at a point on the waistband so slightly on the forward side thereof**" (*id.* at 2:60-65) (emphasis added).  Nowhere in the specification is an indirect connection described, and neither the claims themselves nor the figures support a construction whereby the connection between the "lift bands" and the thigh encircling bands and waistband is anything other than sewn or otherwise directly connected (*see generally id.*).  Every embodiment disclosed in the '036 Patent's specification requires a direct attachment between the "lift bands" and the thigh encircling bands and waistband.  Thus, Defendants' proposed construction of "attached" – "sewn or otherwise directly connected" – should be adopted.  *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1379 (Fed. Cir. 2005) (claim term was "properly construed in accordance with a limitation that was 'repeatedly and consistently' described in the specification where '[t]hose statements, some of which [were] found in the "Summary of the Invention" portion of the specification, [were] not limited to describing a preferred embodiment, but more broadly describe the overall inventions of [the] patent[ ]'") (quoting *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347-48 (Fed. Cir. 2004)).

Defendants' proposed construction of "attached" is also consistent with the plain and ordinary meaning of the term, as set forth in a dictionary definition of "attach" at the time the application for the '036 Patent was filed, which was "to make fast (as by tying or gluing)" (Webster's Third New International Dictionary of the English Language (2002), attached hereto

as Ex. B).  For all of the foregoing reasons, Defendants' construction of "attached" – sewn or otherwise directly connected – should be adopted.

### D.    "Spiral Up and Out" (Claim 1)

| Blackbird's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "curve up and toward the front" | "wind around wearer's leg from point at the inner thigh region of the bottom of buttocks to point above and forward of the hip" |

With reference to the "lift bands" addressed above, claim 1 further requires the lift bands to "spiral up and out" (Ex. A at 3:20-29).  Blackbird's proposed construction replaces the term "spiral" with the term "curve" and replaces the term "out" with the term "toward the front," neither of which clarifies the meaning of the claim term or is consistent with the limited scope of the '036 Patent's specification.

Blackbird's and Defendants' respective constructions rely on the same two disclosures in the '036 Patent's specification for support:

> The lift bands each are wrapped around and beneath a respective buttock and are spiraled upwardly over the outside of the hip, extending to a waist band encircling the waist of the wearer. The upper ends of the lift bands are attached to the waist band at a point above and forward of the wearer's hip.

(*id.* at 1:31-36).

> Each lift band 14A, 14B extends outwardly and upwardly to a point of attachment 20 to the waistband 16, forwardly and on the hip of the wearer. Each lift band 14A, 14B wraps around beneath a buttock and winds upward over a hip of the wearer in an approximate spiraling manner.

(*Id.* at 2:29-33).

Figures 1A and 1B illustrate the "spiral up and out" concept described in the passages above.  Lift bands 14A and 14B are attached to the thigh encircling bands (described above) at the wearer's inner thigh region 18 (*id.* at 2:25-28).  From the point of origin at the inner thigh region 18, lift bands 14A and 14B extend underneath the wearer's buttocks toward the outer

thigh region and upward around the wearer's hips to attach to the waistband 16 (*id.* at 2:29-33). As described by claim 1, it is the tight engagement of the lift band underneath the buttocks created by extending the lift bands from the inner thigh to the front portion of the waistband that creates a "significant lifting force" (*id.* at 3:20-29).

Defendants' proposed construction is thus consistent with how the term "spiral up and out" is described in the specification and is in line with its "lifting" function as claimed in the '036 Patent. As such, Blackbird's proposed construction, which substitutes the inventors' own language for two equally vague words, should be rejected, and Defendants' proposed construction should be adopted.

**E.      "Crotch Strap Extending from the Front of Said Waistband to the Rear of Said Waistband" (Claim 1)**

| Blackbird's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| No construction is needed; if the term needs to be construed, it should be construed as: "strip for holding together portions of the garment continuing in a direction from the front of said waistband to the rear of said waistband" | "piece of fabric with triangular front and back panels that is secured to waistband at front and rear" |

Claim 1 further recites the term "crotch strap extending from the front of said waistband to the rear of said waistband" (Ex. A at 4:5-6). Blackbird proposes that the term need not be construed, yet provides an alternative construction that broadens the scope of this term beyond the proper scope supported by the specification.

The specification defines this component within the context of the '036 Patent, and both parties' constructions rely on the same disclosure: "A front to rear extending crotch strap 38 is also secured to the waistband 30 via included triangular fabric panels 39" (*id.* at 2:58-59). Defendants' construction – "piece of fabric with triangular front and back panels that is secured to waistband at front and rear" – is taken directly from this portion of the specification. On the

other hand, Plaintiff's proposed construction of a "strip for holding together portions of the garment continuing in a direction from the front of said waistband to the rear of said waistband" is vague, unsupported by even the portion of the specification Plaintiff cites for support, and fails to provide any certainty as to what would constitute the claimed "crotch strap."

The figures also support Defendants' proposed construction. Representative Figure 2 illustrates said triangular fabric panels 39 extending from a front side of a waistband 30, over the wearer's crotch area, to a rear side of waistband 30, wherein the front and rear end portions of the triangular fabric panels are secured directly to waistband 30 (*id.* at Fig. 2; *see also* Figs. 3-4, 6). Figure 5, which provides an alternative view of the alleged lift support invention, shows that front and rear triangular fabric panels may be joined to one another in the crotch area of the wearer (*id.* at Fig. 5).

Defendants' proposed construction of "crotch strap" as a "piece of fabric with triangular front and back panels that is secured to waistband at front and rear" is supported by and consistent with the specification as a whole, which uses the term "crotch strap" in a consistently limited way. *See Markem-Imaje Corp. v. Zipher Ltd.*, 657 F.3d 1293, 1302 (Fed. Cir. 2011). Accordingly, Defendants' proposed construction should be adopted.

### F.   Terms of Degree and Aesthetics

| Claim Term | Blackbird's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "tightly fit" (Claim 1) | No construction is needed; if the term needs to be construed, it should be given its plain and ordinary meaning, which is: "fit very close to" | Indefinite |
| "tightly engaged" (Claim 1) | No construction is needed; if the term needs to be construed, it should be given its plain and ordinary meaning, which is: "in contact without slack" | (*i.e.*, no reasonably certain construction can |
| "significant lifting force" (Claim 1) | No construction is needed; if the term needs to be construed, it should be construed as "lifting force sufficient to produce a natural looking uplift" | be ascertained) |
| "substantial | No construction is needed; if the terms needs to be | |

| lift" (Claim 4) | construed, it should be construed as "lift sufficient to produce a natural looking uplift to the buttocks of the wearer" | |
|---|---|---|
| "still stiff enough" (Claim 4) | No construction is needed; if the term needs to be construed, it should be given its plain and ordinary meaning, which is: "sufficiently inflexible" | |

Defendants understand that the Court prefers not to address arguments related to invalidity for indefiniteness at the claim construction stage. Defendants, however, believe these terms – all of which are terms of degree and aesthetic preference – cannot be construed in any way that would inform one of skill in the art about the scope of the invention with reasonable certainty, and thus Defendants are unable to provide alternative constructions. Defendants further believe that the indefiniteness issue is ripe and case dispositive. To the extent the Court wishes to defer indefiniteness until a later date, however, Defendants will seek leave to move for summary judgment of invalidity at an appropriate time. For the purposes of claim construction, Defendants respectfully submit that the Court should decline to adopt Plaintiff's proposed constructions, or any construction whatsoever for these five terms. *See Bayer Intellectual Property GmbH, et al. v. Warner Chilcott Co., et al.*, No. 12-1032-GMS, D.I. 120, at 7 (D. Del. Oct. 9, 2014) (rejecting the parties' proposed constructions and finding that the Court is "unable to discern the meets and bounds of the asserted claims").

The five terms above appear in the following two phrases in the asserted claims:

Claim 1:  "A buttocks lift support comprising: a pair of thigh encircling elastic bands adapted to **tightly fit** the upper thighs of a wearer . . . a pair of lift bands . . . said lift bands being **tightly engaged** with a wearer's buttocks when said lift support is worn to exert a **significant lifting force** thereon and also on the thigh encircling elastic bands"

Claim 4:  "A buttocks lift support according to claim 3 wherein said lift bands are elastic, but **still stiff enough** to exert a **substantial lift.**"

(Ex. A at 3:15-29; 4:16-18) (emphasis added).

Plaintiff's own proposed constructions for the bolded terms in these phrases illustrate the indefinite scope of the claims.  For example, Plaintiff seeks to define both "significant lifting force" and "substantial lift" in terms of "a natural looking uplift."  But what is "natural" is in the eye of the beholder.  *See Interval Licensing*, 766 F.3d at 1371 (finding the claimed phrase "unobtrusive manner" to be "highly subjective and, on its face, provides little guidance to one of skill in the art" and finding "sufficient guidance is lacking" in the specifications of the asserted patents); *Bayer Intellectual Property GmbH, et al. v. Warner Chilcott Co., et al.*, No. 12-1032-GMS, 2015 WL 1849015, at *1 (D. Del. Apr. 21, 2015) (granting summary judgment of indefiniteness and explaining that the Court was "unable to construe" a disputed phrase because the phrase used the words "high," "low," "satisfactory," and "reliable," as the patent offered "no standards against which to draw comparisons, and the patent offered no suggestions for how to measure these criteria").

Neither does Plaintiff make any attempt to distinguish a "significant" lifting force from a "substantial" one.  Instead, without identifying any support in the intrinsic or extrinsic evidence, Plaintiff proposes that these two different English words be treated effectively as synonyms.  But plain English tells that what is "substantial" may not be "significant."  A substantial amount of rain may not be significant in a long-term drought.  A substantial number of documents (and arguments) may be adduced to this Court, but not all will prove significant.  Plaintiff's proposal to define these terms to have the same meaning lacks any basis in the record or in the law, which presumes that patentees use different terms to mean different things. *See, e.g., Innova/Pure Water, Inc., v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms.").

The specification of the '036 Patent is no help to Plaintiff here.  Rather, the specification merely states the indefinite terms without defining them.  For example, the specification states that one object of the alleged invention is "to produce a natural looking uplift" (Ex. A at 1:16-20).  The specification utterly fails, however, to explain what "natural looking" means, leaving a person of skill in the art to use his or her own subjective judgment.  "Natural looking," without more, is an inherently indefinite construction.  *See, e.g., Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005) (finding the claim term "aesthetically pleasing" indefinite because the phrase is "completely dependent on a person's subjective opinion" and stating that "[t]he scope of the claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention").

Neither is there anything in the intrinsic evidence that provides reasonable certainty when it comes to these terms of degree.  Forces can be measured, so it was clearly possible for the patentee to define, in empirical terms, what forces qualify as "significant," how stiff is "stiff enough," and how much lift is "substantial."  The patentee instead has left competitors, and anyone else reading the patent, to guess.  As such, these terms are indefinite and not amenable to construction.  *Crane Co. v. Sandenvendo Am., Inc.*, Case No. 2:07-CV-042, 2009 WL 1586704, at *1 (E.D. Tex., June 5, 2009) (invalidating the term "rapidly" as indefinite and noting that "[a]bsent a comparison method or a quantifiable method for measuring rate of time, the court is not persuaded that 'rapidly' is amenable to construction."); *see also Romala Stone, Inc. v. Home Depot U.S.A., Inc.*, Case No. 1:04-CV-2307, 2007 WL 2904110, at *6, *8 (N.D. Ga. Oct. 1, 2007) (finding "a price affordable to an average consumer" was invalid as indefinite).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that their proposed claim constructions be adopted.

Dated:  December 18, 2015

Respectfully submitted,

*/s/ John G. Day*
John G. Day (#2403)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5227)
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Attorneys for Defendants Spanx, Inc.,*
*Bloomingdale's, Inc., and Bloomingdale's by Mail,*
*Ltd.*

*Of Counsel*:

Holly Hawkins Saporito (Ga. Bar No. 142496)
holly.saporito@alston.com
Lindsey Yeargin (Ga. Bar No. 248608)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

OF COUNSEL:

John M. Bowler
john.bowler@troutmansanders.com
Troutman Sanders LLP
Bank of America Plaza
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308-2216
(404) 885-3190

*/s/ Arun J. Mohan*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Arun J. Mohan (#6110)
mohan@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700

*Attorneys For Defendant Moda Latina, LLC*
*d/b/a Leonisa*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
OF COUNSEL:                           P.O. Box 1347
                                      Wilmington, DE  19899
John M. Hintz                         (302) 658-9200
RIMON, P.C.                           kjacobs@mnat.com
245 Park Avenue, 39th Floor           mflynn@mnat.com
New York, NY  10167
(917) 633-4913                        *Attorneys for Defendant Shapers Unlimited,*
                                      *Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

James E. Geringer
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300

*Attorneys for Defendant Amazon.com*